OWENS, Admr., Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Appellant, et al.

[Cite as *Owens v. State Farm Mut. Auto. Ins. Co.* (1996), 112 Ohio App.3d 200.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-96-10.

Decided June 28, 1996.

*J.C. Ratliff* and *Kevin P. Collins*, for appellee.

*James R. Gallagher*, for appellant.

---

EVANS, Judge.

State Farm Mutual Automobile Insurance Company ("State Farm Mutual") appeals from a judgment of the Court of Common Pleas of Marion County, granting summary judgment to Stephen Owens on the issue of the existence of uninsured motorist coverage ("UM coverage") with State Farm Mutual. This case was originally assigned to the accelerated docket; however, pursuant to Loc.R. 12(5) we elect to issue a full opinion in this case.

The facts of this case are not in contention. For a number of years, Stephen Owens purchased automobile insurance through the same State Farm Insurance agency. In early 1987, Owens purchased an automobile policy from State Farm Mutual which provided UM coverage. In June 1987, Owens was involved in a

major traffic violation. To contain rising insurance premiums, Owens's insurance agent, Bernard Gallagher, arranged to have Owens change insurance companies. Owens switched to State Farm Fire & Casualty Company ("State Farm Fire") and expressly rejected UM coverage in his new policy. Three years later in June 1990, as the third anniversary of his driving violation approached and the offense was set to go off his record, Owens anticipated switching back to State Farm Mutual to enjoy a drop in his insurance rates. The switch back to State Farm Mutual was arranged by Gallagher. Although Stephen Owens was the only named insured on the policy, Janet Owens, Stephen's wife, went to the insurance office, paid the premium and signed a rejection of UM coverage.

On February 3, 1991, the Owenses' daughter, Leslie, died in a car accident. Allegedly at fault was an uninsured tortfeasor. On February 2, 1993, Stephen Owens, as the administrator of his daughter's estate, filed a complaint for declaratory judgment on the issue of the existence of UM coverage with State Farm Mutual. State Farm Mutual responded with an answer, admitting the existence of the insurance policy, but denying that the policy included UM coverage. Both parties filed motions for summary judgment. On January 8, 1996, the trial court granted Owens's motion for summary judgment on the issue of UM coverage. State Farm Mutual now appeals that ruling, asserting one assignment of error:

"The trial court erred in ruling that uninsured motorist coverage benefits are available to Plaintiff–Appellee."

The issue presented in this case is whether Janet Owens's signed rejection of UM coverage for a policy in which the only named insured was her husband, Stephen Owens, is a valid and enforceable rejection.

According to R.C. 3937.18, automobile insurance policies in Ohio are required to contain provisions for UM coverage unless the coverage is rejected by the named insured:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.

" \* \* \*

"(B) Coverages offered under division (A) of this section shall be written for the same limits of liability.  \* \* \*

"(C) The named insured may only reject or accept the coverages offered under division (A) of this section.  \* \* \*"

■ The Supreme Court of Ohio has held that in order to provide UM coverage in amounts less than liability limits in an automobile policy, there must be an express rejection of that provision by the insured. *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 51 O.O.2d 229, 258 N.E.2d 429, paragraph one of the syllabus.  Without the express rejection by the insured, an insured is afforded UM coverage in amounts equal to liability limits by operation of law. *Id.* at paragraph two of the syllabus.

■ The signing of a provision requesting that UM coverage not be provided in a policy has been held a valid rejection, absent evidence of duress, fraud or misunderstanding in obtaining the signatures. *Brady v. Universal Underwriters Ins. Group* (1973), 37 Ohio App.2d 107, 66 O.O.2d 198, 307 N.E.2d 548.  Moreover, the burden of demonstrating an express rejection of UM coverage is on the insurance company since the insurer faces defeat in the absence of proof. *Poots v. Motorist Ins. Co.* (1986), 38 Ohio App.3d 48, 49, 526 N.E.2d 71, 73, citing *Ady v. W. Am. Ins. Co.* (1982), 69 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547.

In the present case, Stephen Owens changed insurance companies, returning to State Farm Mutual in 1990.  He was issued a new policy with a provision for UM coverage in amounts equal to his liability limits provided by law, absent his express rejection.  Stephen Owens did not orally reject this coverage.  Moreover, the only signed rejection of UM coverage obtained by State Farm Mutual was from Janet Owens, who was not a named insured on the policy.

■ The fact alone that Stephen and Janet Owens are husband and wife does not bind Stephen contractually for the acts of his wife.  However, an expressly authorized agent can reject UM coverage. *Braden v. State Farm Mut. Auto. Ins. Co.* (1994), 92 Ohio App.3d 777, 781, 637 N.E.2d 109, 111.  Therefore, unless an agency relationship existed between Janet and Stephen Owens, whereby Stephen granted Janet authority to act for him, no valid rejection of UM coverage was obtained by State Farm Mutual.  See *Society Natl. Bank v. Kienzle* (1983), 11 Ohio App.3d 178, 182, 11 OBR 271, 275, 463 N.E.2d 1261, 1265.

The facts surrounding the signing of the rejection form by Janet Owens are sketchy at best and hardly manifest an agency relationship. Bernard Gallagher testified in his deposition that either he or his wife called the Owens home sometime in the summer of 1990 about changing Stephen's policy back to the low-risk State Farm Mutual. Neither Janet nor Stephen remembers receiving this call, discussing the insurance change or arranging to have Janet personally visit the insurance office on her husband's behalf. Janet Owens does not even specifically recall visiting Gallagher's office on the occasion in question, nor does she recall signing the rejection form although she did admit it was her signature on the waiver. The Owenses further testified in their depositions that Stephen Owens usually took care of the insurance matters himself and although Janet may have gone to the agent's office on occasion with Stephen, she would just "sit and listen" to the business being completed. Gallagher's deposition substantiated this testimony when he stated that "normally Mr. Owens came in and normally he signed the forms." The majority of Janet Owens's involvement in her husband's insurance matters apparently occurred when she wrote the checks to pay the insurance premiums.

Given these facts, it is clear that Stephen Owens did not expressly grant Janet authority to sign the UM coverage rejection, nor was authority impliedly granted. Furthermore, it cannot be said that an appearance of authority was created to justify an agency by estoppel. In order to create an agency by estoppel, the principal must hold the agent out to the public as possessing that authority that the agent is attempting to exercise, or the principal must knowingly permit the agent to act as though such authority exits. *Blackwell v. Internatl. Union, U.A.W.* (1983), 9 Ohio App.3d 179, 181, 9 OBR 289, 292, 458 N.E.2d 1272, 1275. Stephen Owens's utter lack of knowledge concerning the appointment to change his policy or his wife's presence at his agent's office negates his ability to create an agency by estoppel. Neither can it be found that Gallagher, when dealing with Janet Owens, believed that she could possess the necessary authority to reject the UM coverage. See *Irving Leasing Corp. v. M & H Tire Co.* (1984), 16 Ohio App.3d 191, 195, 16 OBR 205, 209, 475 N.E.2d 127, 132.

As a result of the above analysis, we find that the rejection form signed by Janet Owens did not effectuate a rejection of UM coverage by the named insured as R.C. 3937.18(C) requires. It follows then that in the absence of Stephen Owens's express rejection, he was provided UM coverage by operation of law pursuant to R.C. 3937.18(A) in amounts equal to his liability limits.

■ In an alternative argument, State Farm Mutual contends that if Janet Owens did not have authority to act as Stephen Owens agent for purposes of rejecting UM coverage, then she likewise lacked authority to contract on his behalf when she switched his policy from State Farm Fire to State Farm Mutual. Moreover, with this policy change invalid, the only insurance policy in effect for Stephen Owens is his old policy with State Farm Fire, wherein he expressly rejected UM coverage.

We find that any argument by State Farm Mutual that the policy Stephen Owens purchased from it was ineffective has been waived by admissions made in the insurers' answer to Stephen Owens's original complaint for declaratory judgment. In their answer, the insurers admitted that State Farm Mutual had issued a policy to Stephen Owens prior to February 3, 1991 with liability coverage in the amount of $100,000 and that policy was "in effect at the time all the events relevant to this case occurred." The only aspect of the policy that State Farm Mutual denied, thus placing it in controversy, was the existence of UM coverage within that policy. Since the validity of the policy itself was unchallenged, State Farm Mutual cannot now be heard to question the authority of Janet Owens to make the contract. State Farm Mutual's assignment of error is overruled.

Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

HADLEY, P.J., and SHAW, J., concur.