OPINION
In this accelerated calendar case, submitted on the record and the briefs of the parties, appellants, David ("Greenwood") and Barbara Greenwood, appeal from the judgment of the Lake County Court of Common Pleas entered on March 7, 2000. The trial court granted appellee's, Progressive Insurance Company ("Progressive"), motion for summary judgment.
The relevant facts are not in dispute. Greenwood sustained serious injuries in a motorcycle accident on October 4, 1998. The tortfeasor was uninsured. Appellants sought to collect payment from Greenwood's insurance policy with Progressive. Progressive declined coverage on the grounds that Greenwood had expressly rejected uninsured motorist coverage.
Greenwood first obtained insurance from Progressive in November of 1989, nine years before the accident. In his initial application, dated October 24, 1989, he did not reject uninsured motorist coverage. However, the parties had further communication regarding the cost of the policy. Progressive sent him a memo on November 16, 1989, indicating he could reduce the cost by signing a form expressly rejecting uninsured motorist coverage. Greenwood signed the form and returned it to Progressive, who received it on November 22, 1989.
Thereafter, Greenwood maintained an insurance policy with Progressive. Renewal certificates were mailed to Greenwood approximately five weeks prior to the expiration date of his then current term of insurance coverage. The insurance policy renewal certificates indicated that uninsured motorist coverage had been rejected. Greenwood continued renewing coverage under the same terms as his first policy. It appears that Progressive never expressly re-offered uninsured motorist coverage. Nor did Progressive ever obtain another express rejection of such coverage. Greenwood never requested that such coverage be added to his policy.
On October 14, 1999, appellants filed suit against various defendants, which included a declaratory judgment action against Progressive. Progressive filed a motion for summary judgment. On March 7, 2000, the trial court granted Progressive's motion, and designated this judgment a final appealable order pursuant to Civ.R. 54(B). The trial court found that the insurance policy in effect on the date of the accident was a renewal policy for purposes of R.C. 3937.18(C). The trial court, applying R.C. 3937.18(C), concluded that Greenwood's rejection of uninsured motorist coverage in his first policy applied to all the subsequent renewals. Therefore, it concluded, Greenwood did not have uninsured motorist coverage on the date of the accident. From this judgment, appellants timely filed notice of appeal, assigning the following error:
 "The trial court committed reversible error in granting defendant-appellee Progressive's motion for summary judgment."
The standard of review for summary judgment is the same for both a trial and an appellate court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Our review is de novo. Burkholder vStraughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported, at 5. Civ.R. 56(C), which provides the standard governing motions for summary judgment, states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
Appellants' argument can be summarized as follows. In instances such as the present case, where a policy of automobile insurance has been purchased and subsequently continuously renewed, the policy commencing each new term of insurance is a new contract, regardless of how the parties may categorize it. Appellants contend Progressive was required by R.C. 3937.18(A) to offer uninsured motorist coverage in conjunction with each renewal, and that any rejection of the offer must be in writing. Progressive did not offer uninsured motorist coverage in conjunction with any of the contracts entered after the first contract, and therefore Greenwood never expressly rejected such coverage after the first contract. Appellants argue that, in the absence of an express rejection of such coverage for the contract that was effective on the date of the accident, Greenwood had uninsured motorist coverage by operation of law, per Abate v. Pioneer Mutual Cas. Co. (1970), 22 Ohio St.2d 161, 165.
R.C. 3937.18 expressly addresses the issue of whether an insurance company must continue making written offers and requiring express rejections of uninsured motorist coverage in situations where it is providing continuing coverage to the same customer by the issuance of replacement policies. R.C. 3937.18 has been amended several times since the parties' initial contract.
"[F]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Groupof Cos. (1998), 82 Ohio St.3d 281, 289. "`Statutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy.'" Ross, supra, at 288-289, quoting Benson v. Rosler (1985),19 Ohio St.3d 41, 44.
The accident occurred on October 4, 1998. The parties' policy contract in effect at that time was entered on November 1, 1997. The version of R.C. 3937.18 applicable to the instant matter was enacted by H.B. No. 261, effective September 3, 1997. With respect to the question of whether new offers and express rejections of uninsured motorist coverage need be obtained with each renewal of a policy, that version of R.C. 3937.18(C) stated, in pertinent part:
 "Unless a named insured or applicant requests such coverages in writing, such coverages need not be provided in or made supplemental to a policy renewal or replacement policy where a named insured or applicant has rejected such coverages in connection with a policy previously issued to the named insured or applicant by the same insurer."
The current version of R.C. 3937.18(C), states, in pertinent part:
 "Unless a named insured or applicant requests such coverages in writing, such coverages need not be provided in or made supplemental to a policy renewal or a new or replacement policy that provides continuing coverage to the named insured or applicant
where a named insured or applicant has rejected such coverages in connection with a policy previously issued to the named insured or applicant by the same insurer or affiliate of that insurer." (Emphasis added, indicating changes from prior version.)
Section 4 of S.B. 267, amending R.C. 3937.18(C) to its current version, states:
 "It is the intent of the General Assembly in amending division (C) of section 3937.18 of the Revised Code to make it clear that new rejections of uninsured and underinsured motorist coverages or decisions to accept lower limits of coverages need not be obtained from an insured or applicant at the beginning of each policy period in which the policy provides continuing coverage to the named insured or applicant, regardless of whether a new, replacement, or renewal policy that provides continuing coverage to the named insured or applicant is issued by the insurer or affiliate of that insurer with or without new policy terms or new policy numbers."
While the statement of purpose regarding the amendment of R.C. 3937.18
points out that the legislature determined that the statute needed fine-tuning to clarify its intent, the language of the prior version indicates the same intent and purpose.
In the present matter, Greenwood had rejected uninsured motorist coverage in connection with a policy previously issued to him by Progressive. The policy issued on November 1, 1997, was a renewal policy. As such, under the statute, Progressive was not required to offer or provide uninsured motorist coverage, absent a written request from Greenwood for the coverage. See Hammer v. Lumbermens Mut. Cas. Co. (Aug. 20, 1999), Lucas App. No. L-98-1283, unreported, discretionary appeal not allowed, 87 Ohio St.3d 1462 . After the initial rejection of coverage, no request for coverage was made. In the absence of such a request, Progressive was not required to provide uninsured motorist coverage, nor may it be imposed by operation of law. Appellants' assignment of error is without merit.
The judgment of the trial court is affirmed.
 _______________________________________ PRESIDING JUDGE WILLIAM M. O'NEILL
CHRISTLEY, J., GRENDELL, J., concur.