JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant/cross-appellee State Farm Insurance Company ("State Farm") appeals from the decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of plaintiffs-appellees/cross-appellants Terry and Virginia Leffler (referred to individually by name or collectively as "Lefflers"). Lefflers appeal from the denial of their motion for summary judgment on the issue of their claim for bad faith. For the reasons stated below, we reverse.
 I {¶ 2} On August 16, 2000, Terry Leffler was involved in an automobile accident wherein the motorcycle he was riding was struck by an underinsured motorist. Lefflers brought suit against the tortfeasor and notified State Farm of a potential claim for underinsured motorist coverage ("UIM"). With State Farm's consent, Lefflers executed a full and final release for all claims against the tortfeasor and accepted the tortfeasor's insurance policy limits in the amount of $12,500. Lefflers then sought UIM coverage from State Farm.
 {¶ 3} On August 15, 2002, Lefflers filed an action in the Cuyahoga County Court of Common Pleas seeking a declaratory judgment that would enable them to recover under three State Farm policies of insurance.[1]
State Farm denied coverage as to the van and car policies, in part, because of anti-stacking provisions contained in the policies' uninsured/underinsured motorist coverage provisions.
 {¶ 4} On May 14, 2003, following the submission of the parties' respective motions for summary judgment, responses, and replies thereto, the trial court granted Lefflers' motion for summary judgment on the coverage issues, and granted State Farm's motion on the bad faith claim. On May 19, 2003, following the submission of stipulated damages, the trial court entered final judgment in favor of Lefflers in the amount of $75,000 plus interest from August 16, 2001.
 {¶ 5} State Farm filed its timely appeal and advances one assignment of error for our review. Lefflers timely responded and have advanced one assignment of error.
 II {¶ 6} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317.
 {¶ 7} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330. The record on summary judgment must be viewed in the light most favorable to the opposing party. Williams v. First United Church ofChrist (1974), 37 Ohio St.2d 150.
 {¶ 8} In moving for summary judgment, the "moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280. Thereafter, the nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id. A motion for summary judgment forces the plaintiff to produce probative evidence on all essential elements of his case for which he has the burden of production at trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330.
 {¶ 9} This court reviews the lower court's granting of summary judgment de novo. Ekstrom v. Cuyahoga Cty. Community College,150 Ohio App.3d 169, 2002-Ohio-6228.
 III {¶ 10} In its sole assignment of error, State Farm argues: "The Trial Court Erred By Denying Appellant's Motion for Summary Judgment On The Insurance Coverage Issues And By Granting Appellees' Motion For Summary Judgment On The Insurance Coverage Issues." For the reasons stated below, we find merit to this assignment of error.
 {¶ 11} State Farm acknowledges that the motorcycle policy did not offer UM/UIM coverage and, therefore, said coverage arose by operation of law. State Farm paid to Lefflers the policy limit of $50,000 minus the $12,500 Lefflers received from the tortfeasor. State Farm declined to pay benefits under the van and car policies because Lefflers did not pay for such coverage and each policy contained anti-stacking provisions[2]
that precluded recovery.
 {¶ 12} Lefflers argue that the rejections of coverage contained in the van and car policies are invalid. This allegation is not disputed as State Farm acknowledges that Lefflers' signed UM/UIM rejection forms are invalid pursuant to Linko v. Indemnity Ins. Co. of North Am.,90 Ohio St.3d 445, 2000-Ohio-92, and Kemper v. Michigan Miller's Mut.Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101. The UIM coverage arose, therefore, by operation of law. Id.
 {¶ 13} State Farm argues that when UIM coverages arise by operation of law, the terms and conditions of the UIM provisions expressly set forth in the policies should control and the anti-stacking provisions contained in the policies should apply. Abate v. The Pioneer Mut. Cas.Co. (1970), 22 Ohio St.2d 161. Lefflers, then, would be bound to the terms and conditions in the policy as if they had purchased the coverage.
 {¶ 14} R.C. 3937.18(G) specifically permits the inclusion of anti-stacking provisions in policies of insurance. R.C. 3937.18(G) states that an automobile policy of insurance "may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages * * *." State Farm argues, absent this provision, Terry Leffler would be entitled to greater coverage by operation of law than he would had he purchased the UM/UIM coverage. State Farm argues such a result is illogical and inequitable. We agree.
 {¶ 15} Lefflers argue that State Farm's reliance on the anti-stacking provisions is misplaced because the endorsement that contained the anti-stacking provisions was not made a part of either the van or car policies.
 {¶ 16} The anti-stacking provision is found in the policy under "Section III — Uninsured Motor Vehicle — Coverage U * * *."[3]
The endorsement reads: "You have this coverage if `U' appears in the `Coverages' space on the declarations page." Our review of the policies' declarations pages reveals that "U" does not appear under the coverages heading or elsewhere on the declarations pages. Lefflers argue then that without "U" on the declarations page, the exclusion is not applicable. However, coverage "U" is the endorsement that provides UIM coverage under the policy and would have applied had Lefflers purchased UIM coverage. Therefore, any restrictions contained in the endorsement apply by operation of law. Abate, supra.
 {¶ 17} Lefflers correctly argue that when coverage arises by operation of law, the amount is equal to the liability limits. Gyori v.Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d. Also, where a policy of insurance specifically sets forth UM/UIM coverage, but such coverage is not explicitly purchased or rejected, but arises by operation of law, the restrictions contained in the policy remain. Thus, had Lefflers purchased UM/UIM coverage, they would have been subject to the limitations contained within coverage "U." Lefflers cannot argue that they are entitled to the UIM coverage under the policy, and at the same time argue that restrictions contained therein do not apply to them. We find that the anti-stacking provisions contained in coverage "U" apply. We now turn to the issue of whether the anti-stacking provisions are valid.
 {¶ 18} Lefflers argue that anti-stacking provisions are only valid if presented by clear and unambiguous language, and that such provisions should be narrowly construed. Savoie v. Grange Mutual Inc. Co. (1993),67 Ohio St.3d 500. The policy's anti-stacking provision provides that:
"If There Is Other Uninsured Motor Vehicle Coverage
 Any and all stacking of uninsured motor vehicle coverage is precluded.
 If other policies issued by us to you, your spouse or any relativeapply.
 Subject to 1 above, if two or more motor vehicle liability policiesissued by us to you, your spouse, or any relative, providing uninsuredmotor vehicle coverage applied to the same accident, the total limits ofliability under all such policies shall not exceed that of the policywith the highest limit of liability."
 {¶ 19} We find that this language is clear and unambiguous for purposes of R.C. 3937.18(G). See Wallace v. Balint (2002),94 Ohio St.3d 182. (The Ohio Supreme Court found similar language to be unambiguous.) Because each policy has an equal per person limit, there is no dispute as to the policy with the highest limit of liability.
 {¶ 20} The anti-stacking provisions contained in the policies are valid and arise by operation of law, and the trial court erred in granting summary judgment on this issue in favor of Lefflers. State Farm's sole assignment of error is sustained.
 IV {¶ 21} In conclusion, we find that the trial court erred by granting Lefflers' motion for summary judgment on the coverage issues. The anti-stacking provisions preclude coverage beyond the $50,000 previously recovered by Lefflers. This being the finding of the court, Lefflers' bad faith claim is moot and need not be addressed.
 {¶ 22} The judgment is reversed.
Judgment reversed.
This cause is reversed.
It is, therefore, considered that said appellant recover of said appellees costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Michael J. Corrigan, P.J. and Timothy E. McMonagle, J. Concur.
[1] The policies were No. G06 1989-F03-35A, that covered Lefflers' motorcycle ("motorcycle policy"); No. 720 6906-E11-35A, that covered a 1989 GMC van ("van policy"); and No. 720 6909-E11-35A, that covered a 1989 Lincoln Mark VII ("car policy").
[2] Anti-stacking provisions prevent an insured from aggregating the policy limits of multiple policies to increase the maximum amount of benefits available.
[3] "U" is defined as "when the other car or driver is not insured or is underinsured."